| | | |
|---|---|---|
| **JERRY LEE REASON, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.** _____ |
| | ) | |
| **RAYMOND HORTON and** | ) | **JURY DEMAND** |
| **BRYAN HARRISON** | ) | |
| | ) | |
| **individual capacity** | ) | |
| | ) | |
| **Defendant(s)** | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Jerry Lee Reason, Jr. (hereinafter "Plaintiff"), by and through counsel, and files his Complaint joint and severally as follows against the Defendant(s), Raymond Horton and Bryan Harrison in their individual capacities seeking relief and redress under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the First, Fourth, and Fourteenth Amendments to the Constitution or laws of the United States of America. Plaintiff further seeks relief against Defendants in their individual capacity for the intentional and willful acts perpetrated against his person and property pursuant to state common law.

### PARTIES

1. The Plaintiff, Jerry Lee Reason, Jr., (hereinafter referred to as Plaintiff) is an adult resident and citizen of Robertson County, Tennessee.

2. Upon information and belief, Defendant Raymond Horton (hereinafter referred to as Defendant Horton) is an adult resident and citizen of the State of Tennessee. Defendant Horton

is employed as a deputy sheriff with the Robertson County Sheriff's Office. **Defendant Horton should also be jointly personally and financially responsible for any disbursement and payment of damages above and beyond that of any indemnification by Robertson County or such other entity. This is necessary for the purposes of deterrence of such future conduct and accountability.**

3.     Upon information and belief, Defendant Bryan Harrison (hereinafter referred to as Defendant Harrison) is an adult resident and citizen of the State of Tennessee. Defendant Harrison is employed as a deputy sheriff with the Robertson County Sheriff's Office. **Defendant Harrison should also be jointly personally and financially responsible for any disbursement and payment of damages above and beyond that of any indemnification by Robertson County or such other entity. This is necessary for the purposes of deterrence of such future conduct and accountability.**

4.     All Defendant(s) may be served process via Robertson County Sheriff's Office and/or personally. Robertson County Attorney Clyde Richert who has been communicating on behalf of Defendants and the Roberston County Sheriff's Office responded to counsel that he is not able to accept a request for waiver of service of summons as is customary.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by the Constitution of the United States of America.

6.     Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the First, Fourth, and Fourteenth Amendment to the Constitution of the United States of America.

7.    Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing plaintiff in actions brought under 42 U.S.C. § 1983.

8.    This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more Defendant(s) reside in this judicial district. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

9.    This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.    The Court may award damages and grant declaratory and injunctive relief for constitutional violations pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, Federal Rules of Civil Procedure 57 and 65.

11.    Plaintiff shall file a motion for expedited discovery to obtain video and documents pertaining to this incident which Defendant(s) refuse to provide claiming "investigation," "privacy of residence," and such other exceptions under the Tennessee public records statute(s).

12.    Plaintiff reserves the right to amend this Complaint after having sufficient opportunity to obtain additional facts from reviewing such video and/or documents. Defendant(s) have surreptitiously provided limited records under a number of public records requests over different phases. Robertson County Sheriff himself attempted to dictate to counsel and Plaintiff

what documents were relevant to be produced which is not consistent with the Tennessee Open Records Act TCA 10-7-503.

## STATEMENT OF FACTS

13.    At all times relevant to this Complaint, Defendant(s) were acting under the color of law.

14.    At all time relevant to this Complaint, Plaintiff was subjected to an unlawful detention and/or seizure as defined by law by Defendants.  Any reference to detention and/or seizure shall have the same meaning for purpose of brevity and clarity in this pleading.

15.    On September 12, 2024, Plaintiff Jerry Lee Reason was on his private property and driveway.

16.    Defendants and two other Robertson County Sheriff Deputies arrived on scene at the end of Plaintiff's driveway for the purpose of executing an arrest warrant on "Jerry Reason." The other two deputies are identified as Preston Morris and Coleman Lewis.

17.     The arrest warrant issued by the State of Tennessee Department of Correction provided the following information as illustrated below:



18.     "Jerry Reason" is Jerry Alexander Reason whose date of birth is April 22, 1996, and is the nephew of Plaintiff.

19.     The arrest warrant clearly indicates that Jerry Alexander Reason is six foot tall, has hazel eyes, and weighs 180 pounds.  Defendants and the deputies on scene had the warrant in their possession and body camera video demonstrates a deputy retrieving it from a patrol car.

20.     Defendant Horton and Defendant Harrison each had personal knowledge of Plaintiff's identity through previous interactions as admitted in body camera videos produced to Plaintiff through open records requests.

21.    Defendant Horton was the first deputy to interact with Plaintiff while the three other deputies were pulling onto the property in their patrol cars or walking to Plaintiff's vehicle. Defendant Horton approached the driver side door while Plaintiff was in the driver seat.

22.    Plaintiff asked Defendant Horton "do you know who you are talking to sir?"

23.    Defendant Horton responded "yeah…you remember I came out here last time."

24.    Defendant Harrison states "I know who he is."

25.    Plaintiff requested a supervisor after instructing the deputies to leave his property.

26.    Defendant Harrison communicated that he was the "supervisor."

27.    Deputy Horton asked Plaintiff what year he was born and Plaintiff responded "1972" and this was prior to being taken into physical custody.

28.    Defendant Harrison states that Plaintiff is being placed "into handcuffs" because he is "Jerry Reason."

29.    It is self-evident at this point of the interaction that Defendants and the deputies failed to properly review the warrant and the identifying information and/or characteristics of the person sought to be arrested as the subject of the warrant.

30.    Plaintiff demonstrated any level of frustration expected of a reasonable person who was being falsely identified and detained.  This does not rise to a level of any passive or active resistance.

31.    Plaintiff engaged in constitutionally protected activity verbally challenging the deputies.

32.    It would be incredulous to expect a reasonable person to "remain calm" who was the subject of misidentification and detention arising out of sloppy police work meaning a simple review of the warrant.

33.     Defendants further demonstrated carelessness and negligence by confusing Plaintiff's son and nephew who are both known to each of them and local law enforcement.

34.     Defendant Harrison proclaims that Plaintiff should have remained "calm." Plaintiff did not demonstrate any aggression or resistance to justify any detention at this point or any at time during the incident.

35.     Defendant Horton asked Plaintiff where his "son" was located.  Plaintiff responded that his "son" was incarcerated at the Robertson County Jail.

36.     Defendant Harrison knew identity of Plaintiff from high school and interactions since 2009.

37.     Defendant Harrison stated "until we know that you are the person we are not looking for" that Plaintiff would remain in handcuffs.

38.     Defendant clearly stated that Plaintiff was in handcuffs because he "Jerry Reason" and the name on the warrant.

39.     It was immediately thereafter that another deputy presented the warrant to Defendant Harrison.  Defendant Harrison then reads the birth year.  Any negligence at this point ended and the detention was intentional and willful.

40.     Defendant Harrison referred to Plaintiff on scene as "Lee" which is Plaintiff's middle name and is the name he is customarily referred to as.  This demonstrates Defendant Harrison knew Plaintiff was not the subject of the warrant to be arrested.

41.     Defendant Horton communicates to Plaintiff on scene with questions such as "don't you remember me from last time" and "we know each other."

42.     Defendant Horton had been on Plaintiff's property and interacted with Plaintiff two or three months prior September 12, 2024.

43.     Plaintiff was physically detained and placed into handcuffs upon his identifying himself as Jerry Lee Reason prior to a deputy retrieving the warrant from the patrol vehicle and providing it to Defendant Harrison.

44.     Defendant Harrison reviewed the warrant with the other deputy and had sufficient information to reasonably conclude that Plaintiff was not the subject of the warrant.  Defendant Harrison recognized and verbally stated aloud the date of birth clearly not matching the physical description of Plaintiff who is much older in appearance.

45.     Plaintiff stated aloud while being placed into the patrol car that he was "born in 1972….look at me (reference to physical appearance clearly that of a 52 year old.)

46.     Defendant Harrison continued to detain and seize Plaintiff and placed him into a patrol vehicle.

47.     Plaintiff stated that the name of his son Zachary Christian Reason did not match the name of the warrant.

48.     Defendant Harrison stated to Plaintiff "we've dealt with each other a thousand times."

49.     Defendant Horton stated to Plaintiff "remember me from last time" while placing Plaintiff into the patrol vehicle in handcuffs.

50.     Plaintiff recounted to Defendant Horton being on his property on or about July 4 of some year referencing "fourth of July" and something about his daughter.  Defendant Horton affirmed Plaintiff's statements as correct and true.

51.     Plaintiff identified his nephew as having the same first and last name and was at a half-way house in Winchester, Tennessee.

52. Defendant Harrison stated Plaintiff would continue to remain detained and "figure out what's going on."

53. Even assuming Defendants had lawfully detained Plaintiff because of confusion over a first and last name and laziness or negligence reviewing the information on the arrest warrant, Defendants had sufficient information at this point to release Plaintiff from detention as there was no longer any basis under law for such detention.

54. Plaintiff avers that Defendants at no time had any legal basis to detain him.

55. Immediately prior to being seized by Defendants, Plaintiff removed his wallet and produced his identification. This is not an act of resistance or failing to comply with lawful and/or unlawful commands.

56. Plaintiff was instructed by Defendant Harrison who raised his left hand and arm signaling to stop his movement hearing "whoah..whoah…whoah.." and Plaintiff complied. Plaintiff did not take more than a few steps and never stepped beyond the immediate area by the driver and passenger side doors of his truck. This is demonstrated below:



57. Defendant Harrison instructed Plaintiff turn around and put his hands behind his back. Plaintiff merely responded by raising his wallet and showing his identification proclaiming he was "Jerry Reason." This is demonstrated below and this is what Defendants are claiming as

"resistance." This is not an act of resistance or failing to comply with lawful and/or unlawful commands.



58.     Defendant Horton used unreasonable force to twist Plaintiff's arms and hands and turning him around to be slammed into the fender side of the truck bed as demonstrated below:



59.     Defendants and deputies used excessive force to detain Plaintiff without proper cause or legal basis.

60.     Plaintiff did not perform any acts that could be deemed as passive or active resistance.

61.     Defendant Horton wrote in a report "we asked Jerry to put his hands behind his back, he stated no. So I grabbed Jerry's arm and assisted his arm behind his back."  See below.



62.     Defendant Horton wrote a false statement that Plaintiff responded "no" to the command to put his hands behind his back.  There is no evidence in the audio-video captured by multiple body cameras to support this false attestation.

63.     Defendant Horton violated department policies by failing to attempt to de-escalate prior to a use of force.

64.     Defendant Harrison violated department policies by failing to attempt to de-escalate prior to a use of force.

65.     Defendant Harrison pursuant to department policies and as a matter of law had an obligation to intervene and stop Defendant Horton's and the other deputy's use of force.

66.     Plaintiff asked Defendants "you know I ain't the one right ?"  Defendant Horton responded what sounds audibly like "yeah."  It is clear that there was an affirmative response to Plaintiff's question.

67.     Defendant Horton violated department policies pertaining to use of force continuum as his level of force was only appropriate for a person that was assaultive and/or aggressive.

68.     Plaintiff demonstrated no resistance as he merely presented his wallet and identification.

69.     Subsequent to Plaintiff being placed into the patrol car while handcuffed and the door closed, Defendant Harrison repeats aloud that Plaintiff "was born in "72" while holding Plaintiff's identification and wallet.

70.     Defendant Harrison stated that Plaintiff would still be detained until they "were done" and was "not going to stop us from we got to do."

71.     Defendants contend that Plaintiff was also detained because of his alleged passive or active resistance to their presence and/or commands.

72.     Defendants consistently communicate on scene about Plaintiff being resistant.

73.     Defendant Harrison stated that Plaintiff would remain detained as "we are not taking his word for it especially after acting like that."  Defendant Harrison clearly affirms that Plaintiff was detained for his demeanor and disposition upon Defendants and other deputies arriving on scene in an aggressive manner and escalating the interaction.  Defendant Harrison repeatedly states Plaintiff should have remained calm and that was the basis for the continuing detention and being handcuffed.

74.     Defendant Harrison specifically recounted Plaintiff's statements about getting off his property and "they" did not know who "they" were dealing with.

75.     Defendant Harrison specifically states "he is still getting detained" … "especially after he acted like that."

76.     Defendants retaliated against Plaintiff for challenging their authority as permitted being a constitutionally protected activity.

77.     Plaintiff at no time obstructed their purpose for being on his property being to arrest Plaintiff's nephew.

78.     Defendant Horton drove the patrol car on the property with Plaintiff inside. Defendant Horton stated "we know each other" and "you've been great with me."

79.     Defendant Horton recounted facts pertaining to some previous interaction involving Plaintiff's daughter.  Defendant Horton stated he recalled how Plaintiff was "cutting up" with him."

80.     Plaintiff repeatedly informed Defendants that Jerry Alexander Lee was not present on his property.

81.     Defendants and the other two deputies searched Plaintiff's residence without consent.

82.     Defendant Harrison speaks to the other three deputies after exiting the residence and begins to recognize the unlawful detention of Plaintiff and begins to build up a pretext and coaching the other deputies saying there was "a lawful right to detain him."  Defendant Horton affirms this statement saying "yeah."

83.     Defendant Harrison stated the other deputies could arrest Plaintiff for resisting arrest and that was in their discretion.

84.     Defendant Harrison confers with the deputies about possibly arresting Plaintiff for driving a vehicle on private property and that Plaintiff only had an identification and not a drivers license.

85.     Defendant Harrison during this time is seeking to entrap and arrest Plaintiff demonstrating a clear malice and reckless disregard for the truth.

86.     Defendant Harrison's demeanor and cadence speaking alters as he knows the body cameras are capturing his statements and developing a record.

87.     Defendant Harrison continues to plead with the deputies to arrest him for resisting arrest or "resisting."

88.     Plaintiff sustained injuries arising out of the unlawful and excessive use of force by Defendants.

89.     Defendant Harrison instructs Defendant Horton not to read any Miranda rights to Plaintiff.

90.     Upon information and belief, Defendant Harrison instructed Defendant Horton something to the effect of trying to have Plaintiff drive out onto the street for the purpose of having a legal basis to arrest Plaintiff. This was muttered in a whisper and it is believed to be "let him try to pull out" or "wait till he pulls out."

91.     Irrespective of what Defendant Harrison whispered as referenced above, it is surreptitious at the least or unlawful at the worst to be whispering something involving Plaintiff while in detention and spoliating a record of the incident. The body cameras were recording.

92.     Plaintiff was detained for approximately twenty minutes exceeding the lawful period to perform a sweep of the residence to locate Jerry Alexander Reason.

93.     Defendants unlawfully performed a search of the residence exceeding the lawful scope of an arrest warrant.

94.     At the end of detention, Defendant Harrison states that he and Plaintiff have "always been cool….we've been dealing with each other since I worked for Springfield…hell since I was hired back in the jail."

95.     Subsequent to Plaintiff being released from detention, Defendant Harrison stated "I did not know the date of birth till after we read the warrant."

96.     The legal distinction between a detention and a seizure by police officers in the Sixth Circuit for Section 1983 claims primarily hinges on the intent of the officer and the level of intrusion involved. A "seizure" under the Fourth Amendment occurs when there is a governmental termination of an individual's freedom of movement through means intentionally applied. This requires that the officer act with the intent to restrain, detain, or arrest the individual. For example, in Yatsko v. Graziolli, 458 F. Supp. 3d 702, the court emphasized that a seizure occurs only when the officer intends to restrain or detain the individual, as demonstrated by the use of deadly force to neutralize a threat, which inherently involves an intent to restrain Yatsko v. Graziolli, 458 F. Supp. 3d 702. Similarly, in  Napper v. Hankison, 617 F. Supp. 3d 703, the court clarified that a Fourth Amendment seizure does not occur unless the force is intentionally applied to the individual as the deliberate object of the officer's actions Napper v. Hankison, 617 F. Supp. 3d 703.

97.     Plaintiff was subjected to an unlawful detention and/or seizure by Defendants arising out of the level of force and intrusion to accomplish restraint.

### COUNT 1

### FIRST AMENDMENT RETALIATION
### IN VIOLATION OF THE FIRST AMENDMENT
### ALL DEFENDANTS
### 42  U.S.C. § 1983

98.     Plaintiff restates and incorporates by reference herein the allegations averments in the above paragraphs as if specifically set out.

99.     The First Amendment protects individuals' rights to express speech, including criticism and objections toward police conduct.

100.    To establish a First Amendment violation under  42 USCS § 1983 for detention or seizure in retaliation for exercising free speech rights in the Sixth Circuit, a plaintiff must demonstrate three elements: (1) the plaintiff engaged in constitutionally protected speech or conduct; (2) the plaintiff suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated, at least in part, by the plaintiff's protected conduct. Wood v. Eubanks, 25 F.4th 414, Cruise-Gulyas v. Minard, 918 F.3d 494, Hartman v. Thompson, 931 F.3d 471.

101.    The first element requires that the speech or conduct in question is protected under the First Amendment. For example, speech critical of public officials or expressive conduct, such as gestures, is generally protected Cruise-Gulyas v. Minard, 918 F.3d 494, Greene v. Barber, 310 F.3d 889. The second element involves showing that the adverse action, such as detention or seizure, would deter an ordinary person from continuing to exercise their First Amendment rights. Courts have recognized that actions like unwarranted police stops or detentions can meet this threshold Wood v. Eubanks, 25 F.4th 414, Cruise-Gulyas v. Minard, 918 F.3d 494. The third element requires a causal connection between the protected conduct and the adverse action, meaning the adverse action was motivated, at least in part, by the plaintiff's exercise of their First Amendment rights Hartman v. Thompson, 931 F.3d 471, Meeks v. Schofield, 10 F. Supp. 3d 774.

102.    Temporary detention by police can constitute an "adverse action" for purposes of a First Amendment retaliation claim under  42 USCS § 1983 in the Sixth Circuit. The Sixth Circuit has consistently held that an adverse action is one that would deter a person of ordinary firmness from continuing to engage in protected conduct. Temporary detention, as a form of police action, can meet this standard if it would deter an ordinary person from exercising their First Amendment rights.  For example, in Frenchko v. Monroe, 672 F. Supp. 3d 421, the court recognized that

detention and arrest are "easy to identify" as adverse actions because they would undoubtedly deter an average law-abiding citizen from engaging in similar conduct in the future. Frenchko v. Monroe, 672 F. Supp. 3d 421. Similarly, in Cruise-Gulyas v. Minard, 918 F.3d 494, the court held that an unwarranted police stop constitutes an adverse action because it infringes on an individual's liberty and would deter a person of ordinary firmness from repeating the conduct that led to the stop. Cruise-Gulyas v. Minard, 918 F.3d 494. Additionally, in Hill v. Lappin, 630 F.3d 468, the court emphasized that even the threat of an adverse action can satisfy the adverse action element of a First Amendment retaliation claim Heyward v. Cooper, 88 F.4th 648.

103.    The Sixth Circuit's standard for determining adverse action balances the need to protect individuals from retaliation for exercising their constitutional rights with the principle that not every minor inconvenience or trivial action rises to the level of a constitutional violation. Actions such as detention, arrest, or other significant intrusions on liberty are generally sufficient to meet this threshold Frenchko v. Monroe, 672 F. Supp. 3d 421, Cruise-Gulyas v. Minard, 918 F.3d 494.

104.    It is clearly established that a person has the right to be free from retaliation for exercising their <u>First Amendment</u> freedoms. The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right.

105.    Retaliatory conduct adversely affects protected speech if the conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights. Plaintiff, as persons of ordinary firmness, would be deterred from exercising their first amendment rights after being falsely detained without a lawful basis and such detention was retaliatory.

106.    There is a causal connection between Plaintiff's constitutionally protected activity and adverse effect on such speech.  Defendants' falsely detained Plaintiff without legal basis as retaliation for the exercise of such free speech and this satisfies the third element of a causation.

107.    Defendants retaliated against Plaintiff and continued to detain and seize him in retaliation for protected speech. Defendants were acting under the color of State law while searching and detaining Plaintiff and this was in reckless disregard of Plaintiff's rights.  This detention and seizure of Plaintiff deprived him of his liberty.

108.    Defendants were acting under the color of State law while on scene participating in the unlawful detention and seizure of Plaintiff and this was in reckless disregard of Plaintiff's rights. This detention and seizure of Plaintiff deprived Plaintiff of his liberty.

109.    No objectively reasonable police officer would have reason to believe they had authority to conduct a seizure and detention of a person under the totality of these circumstances particularly after learning of Plaintiff's true identity and not the subject of the arrest warrant.

**COUNT 2**

**UNLAWFUL SEIZURE, DETENTION, AND EXCESSIVE FORCE IN VIOLATION OF FOURTH AMENDMENT BY ALL DEFENDANTS**

**42 U.S.C. § 1983**

110.    Plaintiff restates and incorporates by reference herein the allegations averments in the above paragraphs as if specifically set out.

111.    Plaintiff has a constitutional right to be free from unlawful searches, seizures, and arrest without probable cause. Defendants' acts were conducted without legal justification and such acts are unlawful and a violation of each and every Plaintiff's Fourth Amendment Rights.

112.     As a general principle, a person is seized under the Fourth Amendment when there has been "a meaningful interference with his freedom of movement."

113.     Defendants unlawfully detained and/or conducted a seizure of Plaintiff by physically assaulting, battering, and restraining him without a warrant, probable cause, evidence of a crime being committing, or reasonable suspicion of criminal activity.

114.     Such acts constitute excessive force and the physical force applied to retain the phones was not reasonable or justified.

115.     Defendants were acting under the color of State law while detaining Plaintiff.

116.     Defendants' detention and seizure of Plaintiff deprived Plaintiff of his liberty.

117.     Defendants' detention and seizure of Plaintiff was in reckless disregard of Plaintiff's rights.

118.     At all times, Plaintiff enjoyed reasonable right to and expectation of privacy of his person and personal effects.

## COUNT 3

## DUE PROCESS VIOLATION OF FOURTEENTH AMENDMENT BY

## ALL DEFENDANTS 42 U.S.C. § 1983

119.     Plaintiff restates and incorporates by reference herein the allegations averments in the above paragraphs as if specifically set out.

120.     Defendants were acting under the color of State law while detaining Plaintiff and performing this unlawful detention and seizure.

121.     The detention and seizure of Plaintiff for a prolonged time without judicial review or other notice and opportunity for hearing before a neutral magistrate, Defendants violated Plaintiff's Fourteenth Amendment rights to due process of law.

## COUNT 4

## COMMON LAW CLAIM OF BATTERY

## ALL DEFENDANTS

122.    Plaintiff restates and incorporates by reference herein the allegations averments in the above paragraphs as if specifically set out.

123.    Plaintiff avers that the intentional, fraudulent, and unlawful assault and/or contact upon him without his consent by Defendants constitute the tort of battery in that such harmful and offensive contact was the direct and proximate cause which inflicted anxiety, emotional harm, physical harm, and damages upon Plaintiff.

## COUNT 5

## COMMON LAW CLAIM OF ASSAULT

## ALL DEFENDANTS

124.    Plaintiff restates and incorporates by reference herein the allegations averments in the above paragraphs as if specifically set out.

125.    Plaintiff avers that the intentional, fraudulent, and unlawful assault and/or contact upon him without his consent and permission by Defendants constitute the tort of assault in that he was under a reasonable and immediate apprehension of fear of an immediate battery by Defendants.  Such an immediate apprehension of fear was the direct and proximate cause which inflicted anxiety, emotional harm, physical harm, and damages upon Plaintiff.

## COUNT 6

## COMMON LAW CLAIM OF FALSE IMPRISONMENT

## ALL DEFENDANTS

126.     Plaintiff restates and incorporates by reference herein the allegations averments in the above paragraphs as if specifically set out.

127.     Plaintiff averts that the intentional and unlawful assault and/or contact and/or unlawful confinement or restraint of Plaintiff without his consent by Defendants constitute the tort of false imprisonment by Defendants.  Defendants perpetrated the unlawful restraint of Plaintiff's individual liberty and/or freedom of movement without consent or legal justification within boundaries fixed by Defendants. Plaintiff was conscious of such confinement and these acts were the direct and proximate cause inflicting anxiety, emotional harm, physical harm, and damages upon Plaintiff.

## INJURIES AND DAMAGES

128.     Plaintiff restates and incorporates by reference herein the allegations averments in the above paragraphs as if specifically set out.

129.     Plaintiff seeks recovery of the damages sustained as a direct and proximate result of one or all of the aforesaid acts and/or omissions of the Defendant(s) which include but are not limited to:

a.     Physical pain and mental/emotional distress referenced herein both past and future;

b.     Inability to enjoy the normal pleasures of life both past and future;

c.     Such other emotional harm including fright, shame, and mortification from the indignity and disgrace, consequent upon such an illegal detention, assault, and invasion of privacy;.

d.     Nominal damages;

e.        Such other damages permitted by federal and/or state law;

f.        Punitive damages against Defendants based upon their intentional and reckless conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant(s):

1.        Process be issued and that each Defendants be required to respond within the time provided by the Federal Rules of Civil Procedure;

2.        Declaratory judgment or such other declaration be entered by this Court that the detention, seizure, assault of Plaintiff without warrant, consent, exigent circumstances, or judicial review was unlawful;

3.        Compensatory damages with pre and post judgment interest to Plaintiff due to Defendant(s)' unlawful actions in an amount not less than $300,000.00 or to be determined;

4.        Punitive damages to Plaintiff in an amount to be determined;

5.        Award to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs, and expenses;

6.        Attorney's fees pursuant to Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and/or any other applicable rule or law;

7.        Such other and further legal or equitable relief to which Plaintiff may be entitled as the Court deems proper and/or under such other statutory or common law;

8.        That a jury of Plaintiff's peers be empaneled to try the issues raised in this cause;

Drafted and respectfully submitted by,

/s/Roland Mumford

Roland Mumford BPR 026495
Law Offices of Roland Mumford
242 West Main Street, No. 223
Hendersonville, TN 37075
Phone: 615.348.0070
Fax: 614.246.4110
Email: roland@mumfordlaw.net
Attorney for Plaintiff